WILBUR J. HARTZELL *vs*. ANDERS A. VIGEN, *et al.*

Opinion filed November 10th, 1896.

**Subject of Action Defined.**

The words "subject of the action," as found in Subd. 3, § 5204, Gen. St. Minn. 1894, which requires the plaintiff who desires to serve a summons by publication to make affidavit, among other things, that the court has jurisdiction of the subject of the action, relate to the controversy between the parties, and not the property of the defendant that has previously been seized on attachment.

Corliss, J., dissenting.

**Garnishment—Jurisdiction in Rem.**

The attachment by garnishment of property of defendant upon which the garnishee has a lien is sufficient, under Minnesota statutes cited in the opinion, to give a court jurisdiction to render a valid judgment in *rem* against a non-appearing nonresident defendant served by publication only. The court has power to make all necessary orders for the ultimate application of defendant's interest in the property in satisfaction of such judgment.

Appeal from District Court, Cass County; *McConnell*, J.

Action by Wilbur J. Hartzell against Anders A. Vigen and John Rustad. From a judgment for defendants, plaintiff appeals. Reversed.

*Ball, Watson & Maclay*, for appellant.

The subject of the action is the claim of the plaintiff against the defendant or the contract or controversy out of which such claim arose. The phrase "subject of the action" was first used in this connection in the New York Code of 1849. That the phrase is not easily defined is apparent from the cases and authorities which have discussed it. Pomeroys Rem. § § 475, 487, 490, 775-6, 794; Bliss Code Pl. § § 126, 373, 375; *McKinney* v. *Collins*, 88 N. Y. 216. The requirement that the court must have "jurisdiction of the subject of the action" does not mean that the court must have acquired jurisdiction by seizing property of the defendant before ordering the publication of the summons. *Hulbert* v. *Insurance Co.*, 4 How. Pr. 275; *Force* v. *Gower*, 23 How. Pr. 294; *Fiske* v. *Anderson*, 33 Barb. 71; *Corson* v. *Ball*, 47 Barb. 452; *Kerr*

v. *Mount,* 28 N. Y. 659; *McKinney* v. *Collins,* 88 N. Y. 216; *Bryan* v. *University,* 19 N. E. Rep. 825, (dissenting opinion;) *Jarvis* v. *Barrett,* 14 Wis. 591; *Stone* v. *Myers,* 9 Minn. 303; *Cleland* v. *Taveernier,* 11 Minn. 194; *Iowa Bank* v. *Jacobson,* 66 N. W. Rep. 453; Rule 35, N. Y. Sup. Ct. (1858,) 88 N. Y. 223; Rule 25, Dak. Dist. Ct. p. xxxi, 3, N. D. Neither *Cooper* v. *Reynolds,* 10 Wall. 308-320, nor *Pennoyer* v. *Neff,* 95 U. S. 714, hold that the seizure of defendants property must be made before publication of the summons can be begun. The affidavit for publication in the present case showed fully the nature of the action and that the court had jurisdiction, there was a substantial and sufficient compliance with the requirement of the statute. *Inglie* v. *Welles,* 53 Minn. 197; *Crombie* v. *Little,* 47 Minn. 581; *Major* v. *Edwards,* 53 N. W. Rep. 1041; *Shippen* v. *Kimball,* 27 Pac. Rep. 813; *Anderson* v. *Goff,* 72 Cal. 65; *McCormick* v. *Paddock,* 30 N. W. Rep. 602; *Pettiford* v. *Zoellner,* 8 N. W. Rep. 57; *Martin* v. *Pond,* 30 Fed. Rep. 19; *Cooper* v. *Reynolds,* 10 Wall. 308. The notes found in the possession of the garnishee, as a pledge, were subject to garnishment. Minn. Stat. § 5316; *Tucker* v. *Vaughan,* 23 N. W. Rep. 846; *Ide* v. *Harwood,* 14 N. W. Rep. 884; *Cole* v. *Sater,* 5 Minn. 468; *McCann* v. *Randall,* 17 N. E. Rep. 75; *Storm* v. *Catzhausen,* 38 Wis. 139; *LaCrosse Bank* v. *Wilson,* 43 N. W. Rep. 153; *Elser* v. *Romnel,* 56 N. W. Rep. 1107. The law of Minnesota governs the question. *Cronan* v. *Fox,* 50 N. J. Law, 417. The contingency which renders a debt non-garnishable must be a part or condition of the contract itself out of which the alleged indebtedness grows and not a mere uncertainty as to how the account or balance may stand. *Thorndyke* v. *DeWolf,* 6 Pick. 120; *Webster* v. *Peterson,* 27 W. Va. 314; *N. E. Ins. Co.* v. *Chandler,* 16 Mass. 275; *Dwinel* v. *Stone,* 30 Me. 384; 8 Am. and Eng. Enc. Law, 1195, n. 2; *Tucker* v. *Vaughan,* 23 N. W. Rep. 846. The equity of the mortgagor in mortgaged chattels may be garnished. *Becker* v. *Dunham,* 6 N. W. Rep. 406; *Burnham* v. *Doolittle,* 15 N. W. Rep. 606; *Smith* v. *Grant,* 19 N. W. Rep. 184; *Buck* v. *Merrill,* 48 N. W. Rep. 96; *Carty* v. *Fenstemaker,* 14 Ohio St. 457; *McCown* v. *Smith,* 54 N.

W. Rep. 31; *Torbet* v. *Hayden*, 11 Ia. 435. The judgment in the Minnesota action was entered in strict accord with statute and was valid to the extent of the property attached. *Cousins* v. *Alworth*, 47 N. W. Rep. 169; *Anderson* v. *Goff*, 72 Cal. 65; *Cooper* v. *Reynolds*, 10 Wall. 308. The fact that the exemplified record does not show whether the court required proof of the plaintiffs demand before rendering judgment, does not make the judgment void, nor render it subject to collateral attack. *Skillman* v. *Greenwood*, 15 Minn. 102; *Dillon* v. *Porter*, 31 N. W. Rep. 56; *Hersey* v. *Walsh*, 38 N. W. Rep. 613; *Gorman* v. *Ball*, 18 Wis. 24; *Eagan* v. *Sengpiel*, 46 Wis. 703; *Frankfurth* v. *Anderson*, 20 N. W. Rep. 662.

*Benton & Amidon*, for respondent.

The affidavit for publication was insufficient it simply states that "the court has jurisdiction of this action," it should have stated that "the court has jurisdiction of the subject of the action." The proceeding for service by publication is nonjudicial in its character. The filing of the affidavit with the clerk is merely a performance of a condition precedent to the right of making the publication. *Carson* v. *Shoemaker*, 57 N. W. Rep. 134; *Barber* v. *Morris*, 37 Minn. 194, 33 N. W. Rep. 559; *Cousins* v. *Alworth*, 44 Minn. 505; 47 N. W. Rep. 169. The affidavit was not a sufficient compliance with the statute. *Rhode Island Trust Co.* v. *Keeney*, 1 N. D. 411, 414. The court obtains no personal jurisdiction over nonresident defendants by service of process by publication. An action *in personam* at its commencement becomes as soon as it appears that the defendant cannot be served with process an action *in rem*, and the sole power of the court is to apply the property of the defendant within its jurisdiction to the satisfaction of the amount that shall be adjudged to be due the plaintiff. *Penoyer* v. *Neff*, 95 U. S. 714; *Cooper* v. *Reynolds*, 10 Wall. 308. The first step in acquiring jurisdiction *in rem* is to seize the property to be affected. Conklings U. S. Admiralty, 150-151; Benedicts Admiralty, § § 434, 435. The words "subject

of the action" as used in the Minnesota statute refer to property that has been seized under the attachment. *McKinney* v. *Collins*, 88 N. Y. 216. The notes which the plaintiff sought to reach by garnishment proceedings were held as collateral for an indebtedness which was not then due, and were therefore not subject to garnishment. Wade on attachment, § § 2, 3, 330; § § 5312, 5315, Minn. Stat; *Ettelsohn* v. *Fireman's Fund Ins. Co.*, 31 N. W. Rep. 201; *Perea* v. *Colo. Nat. Bank*, 27 Pac. Rep. 322; *Scurlock* v. *Gulf C. & S. F. Ry. Co.*, 14 S. W. Rep. 148. When the right to money or property depends upon nothing but the running of time, it is due absolutely and without depending upon any contingency. *Edney* v. *Willis*, 36 N. W. Rep. 300. Rustads right to the notes depended entirely upon whether he should pay the indebtedness for which they were pledged as collateral. His right was contingent upon payment and until payment of the principal debt he had no right to the collateral notes whatever. *Wheeler* v. *Day*, 23 Minn. 545; *Thorpe* v. *Preston*, 4 N. W Rep. 227; *Rowell* v. *Felker*, 54 Vt. 524; *Durling* v. *Peck*, 43 N. W. Rep. 65; § 5327, Stats. of Minn; *Neill* v. *Rogers*, 23 S. E. Rep. 702; *Cross* v. *Brown*, 33 At. Rep. 147; Jones on Pledges, 373. It does not appear that there was or would be any surplus in the hands of the bank after applying the notes to the satisfaction of its indebtedness. *Younkin* v. *Collier*, 47 Fed. Rep. 571. Credits of a nonresident debtor cannot be reached by proceedings in attachment or garnishment. *Root* v. *Davis*, 36 N. E. Rep. 669; Reno on Nonresidents, § 140.

BARTHOLOMEW, J. This action is based upon a promissory note executed by the defendant Vigen in favor of the defendant Rustad. The note represented a portion of the purchase price of a certain tract of land in Cass County, and, concurrently with the execution of the note, Rustad executed a contract for the sale of said land to the defendant Vigen. It is alleged in the complaint that Rustad sold and transferred the note to plaintiff, and Rustad was made party defendant, and as to him a decree is asked confirming in plaintiff all Rustad's rights under the contract of sale,

which, it is claimed, passed to the plaintiff by the purchase of the note, and as incident thereto. Both defendants answered, denying plaintiff's ownership of the note. This was the only issue tried below, and defendants prevailed. Plaintiff brings the case into this court.

We learn from the record that the plaintiff claims the ownership of the note by virtue of a purchase at execution sale in Hennepin County, in the State of Minnesota, which execution was issued upon a judgment entered in the District Court of said county, in an action brought by one McKindly against the defendant Rustad. A duly authenticated transcript of the entire record in that case was offered in evidence by appellant, and, on objection, was excluded. From that record we learn that Rustad was not a resident of the State of Minnesota when sued there, but was a resident of this state. There was no personal service of summons, but service by publication was made, or, at least, attempted. There was no appearance, and judgment was taken by default. A writ of attachment was issued about the time of the commencement of the action, and a garnishee summons served upon the Washington Bank of Minneapolis. The disclosure of the garnishee showed that the bank held Rustad's note for over $9,000, on which over $7,000 remained due and unpaid, and that as a collateral to this indebtedness, the bank held notes belonging to defendant Rustad to the amount of about $22,000. Such subsequent proceedings were had in the case that all the collateral notes remaining in the hands of the garnishee after the indebtedness of Rustad to the garnishee was satisfied were sold on execution issued upon the judgment in favor of McKindly and against Rustad, and plaintiff herein became the purchaser at the execution sale. His title is assailed upon grounds which go to the jurisdiction of the District Court of Hennepin County, in the State of Minnesota, to enter any judgment against the defendant Rustad. By stipulation in this case the statutes of Minnesota, as published in 1894, are to be treated as in the record. The first attack upon the judgment, and the one chiefly relied upon,

related to an alleged defect in the affidavit for publication of summons. Section 5204 of said Minnesota statutes specifies the cases wherein service may be made by publication, and what the affidavit must contain, and, among others, it provides: "Third. When the defendant is not a resident of the state, but has property therein, and the court has jurisdiction of the subject of the action." In the case under consideration the affidavit omitted the words "of the subject," making the allegation in that behalf read simply, "And the court has jurisdiction of the action." It is conceded that, in order to confer jurisdiction in this class of cases, all the statutory provisions relating to the publication of summons must be substantially complied with in every particular. Appellant insists that there was substantial compliance in this case, and that, for the purpose of this particular statutory provision, the two phrases, "jurisdiction of the subject of the action," and "jurisdiction of the action," are identical in meaning, and have reference only to the cause of action or controversy between the parties. Respondents insist upon a very different construction. They urge that all actions against nonresidents, where personal service within the state cannot be made, are, in their essential nature, actions *in rem*, and not in *personam*, and that the subject of the action is the *res*, which must be some specific property, which has been seized under a writ of attachment and brought under the control of the court, so it may by proper order be applied to the satisfaction of any judgment that plaintiff may obtain in the case. This, of course, requires that a writ of attachment be issued, and property seized thereunder, in every case under this subdivision, before an affidavit for publication of summons can properly be made. It is conceded by respondents, for the purposes of this point, that this was actually done in the Minnesota case. On the other hand, it is conceded by appellant that the jurisdiction must come through the allegations of the affidavit. It thus becomes necessary for us to place a construction upon the subdivision of the Minnesota statute above quoted. It would have afforded us immediate relief could we have found a con-

struction of the language by the very able Supreme Court of that state. But the point seems not to have been raised there. Indeed, the authorities bearing directly upon the point are very few, and not always satisfactory. We have, however, the same statute in this state, borrowed, as was the Minnesota statute, from the New York Code of Civil Procedure of 1849. It must be conceded, in discussing this proposition, that to construe the words "subject of the action" to mean specific property that has been seized in the action, would be, perhaps, in the interests of an orderly and logical practice; that it would more nearly assimilate actions of this character to actions purely *in rem*; that it would more certainly give to the words the same meaning that was given to them in chancery actions at and prior to the time they were first applied to law actions. But these considerations are entirely inadequate to influence a court, unless it be reasonably certain that such was the meaning given to the words by the legislature when it used them. In Kansas the statute specifically provides that in this class of cases the affidavit for order of publication shall show that property of the defendant has been seized under attachment or some provisional remedy. See § 4155, Gen. St. 1889, and the Kansas decisions there annotated. No doubt this is a wise provision, but it is not reached by construction.

Service of publication is of comparatively recent origin. It was not known at common law. There an absent defendant was compelled to appear by means of the writ of *distringas*, requiring the sheriff to seize a certain amount of his property, and this was repeated again and again, even to the extent of outlawry, if necessary. In England, in 1832, by statute, service by publication was authorized in certain cases in chancery. See 1 Daniell, Ch. Prac. p. 449 *et seq.* Similar statutes existed in New York and perhaps in other states. But service by publication in a law action was unknown in New York until the adoption of the Code of Civil Procedure of 1849, containing the provisions under discussion. It will be instructive to discover the construction put upon it at its first appearance. The case of *Hulbert* v. *Insurance*

*Co.*, 4 How. Prac. 275, was decided in 1850, and it was held that
it was not necessary that an attachment should accompany the
service of summons, but that it might be served afterwards.   It is
not clear, however, that this particular statute was in the mind of
the court when the ruling was made.   Nor do we find any
authoritative utterance upon the point in New York until 1858.
At that time a rule of court was adopted, known as "Rule 25,"
which provided that "in actions for the recovery of money only,
when the summons has been served by publication, no judgment
shall be entered unless the plaintiff, at the time of making appli-
cation for judgment, shall show by affidavit that an attachment
has been issued in the action and levied upon the property
belonging to the defendant."   If the statute required that prop-
erty should be attached before the affidavit for an order for
publication could be made, and that such affidavit should in effect
so state, then it was entirely incompetent for the court to declare
by rule that it should be sufficient if property had been attached
before the application for judgment.   Hence, this rule is a
deliberate declaration of the judges that the statute did not so
require.   In fact, the rule was announced because the opposite
view prevailed.   It had been held in New York, as it was subse-
quently held in other states, that under this statute it was compe-
tent to enter a personal judgment against a nonappearing
defendant, served by publication only, and upon such a judgment
general execution might be issued, under which any property in
the state belonging to the defendant could be seized and sold.
See *Force* v. *Gower*, 23 How. Prac. 294; *Jarvis* v. *Barrett*, 14 Wis.
642; *Stone* v. *Myers*, 9 Minn. 313, (Gil. 287;) *Cleland* v. *Taveernier*,
11 Minn. 194, (Gil. 126.)   Under the New York rule of court this
could not be done.   No judgment could be entered unless prop-
erty of the defendant had been attached at the time of the
application for judgment.   But the fact that so many able courts,
acting under this identical statute, held that no attachment what-
ever was necessary in the case, would seem to be almost conclu-
sive against respondents' position that an attachment is absolutely

essential before publication of summons. And the rule of court, as we understand it, was not based upon the theory that the statute required any attachment. It was based upon and foreshadowed those great principles enunciated and elucidated in 1877 by the Supreme Court of the United States in the case of *Pennoyer* v. *Neff,* 95 U. S. 714,—a case to be hereafter further noticed. In the case of *Whitehead* v. *Railway Co.,* 18 How. Prac. 218, this same language, but in another provision, was under discussion. That action was brought in 1859 under § 427 of the code then in force, specifying the cases in which the action might be brought against a corporation. The second subdivision provided: "By a plaintiff not a resident of this state where the cause of action shall have arisen, or the subject of the action shall be situated within this state." The defendant's property had been seized under a writ of attachment, and the question arose on motion to discharge the attachment, on the ground that the action could not be maintained under the statute. It was conceded that the plaintiff was a non-resident, and that the cause of action did not arise in the state. Hence the only question to be determined was whether or not the subject of the action was situated in the state. There, as here, it was earnestly contended that the subject of the action was the property which had been seized under the writ. But the court said, at page 233: "What is the subject of the action? Not certainly, the title to the property attached, for the plaintiff asserts no such title here. He claims the right to have that property appropriated to the payment of an alleged debt due him from the defendant. But this right is neither questioned nor questionable, if his right to maintain this proceeding is conceded. The subject of the action is the claim therein asserted by him, and the satisfaction of which he seeks out of the property attached, which he concedes to belong to the defendant. See the opinion of Hand, J., in the case of the President, etc., of *Bank of Commerce* v. *Rutland & W. R. Co.,* 10 How. Prac. 8. On the argument the plaintiff referred to the case of *Ready* v. *Stewart,* 1 Code R. (N. S.) 298, as sustaining the

position in question. But I do not so understand the opinion of the learned judge who delivered the opinion in that case. He says the term 'subject of the action' relates to the nature of the action, or the 'thing' sought to be obtained by the judgment to be given, but not at all to the 'person of the defendant.' The learned judge was commenting upon the third subdivision of § 135 of the code, which requires that, in the case of a nonresident defendant who has property in the state; and the action arises on contract, the court should have jurisdiction of the subject of the action. Now, the thing sought to be obtained by the judgment was the establishment of the claim asserted in the action. The idea that the learned judge was combating was, as I understand his language, simply that the term 'jurisdiction of the subject of the action' did not mean jurisdiction of the defendant." In this language is contained a suggestion that is not always kept in view. It is as to the difference between the terms "jurisdiction of the subject of the action" and "jurisdiction of the action." The latter, in its usual acceptance, means complete jurisdiction,— jurisdiction both of the subject of the action and of the parties to the action. Hence, the terms are not synonymous, and cannot be used interchangeably. The former may exist, and the latter not. But the latter cannot exist without the former, since it necessarily includes the former. Now, the affidavit under consideration declared that the court had "jurisdiction of the action," which necessarily included the jurisdiction of the subject of the action. That much the statute required it to contain, and the fact that it contained something more, which the statute did not require, does not affect its efficiency as an affidavit under the statute.

In the light of the above quotation from 18 How. Prac., we wish to discuss another position maintained by respondent with much confidence. Subdivision 5 of the section of the Minnesota statute, providing cases in which service may be made by publication, reads: "When the subject of the action is real or personal property in this state, and the defendant has or claims a lien or interest therein," etc. Here, it is urged, it is clear that the

subject of the action is specific tangible property, and that the same words used in another portion of the same section must have the same meaning. But wherein lies the difference? In cases arising under subdivision 3 there is no controversy concerning the attached property. Plaintiff, by attaching it, declares it to be the property of the defendant, and he can reap a benefit from it only in case it is the property of the defendant. Both parties are interested in declaring it to be defendant's property, and controversy is impossible. In cases arising under subdivision 5, the whole controversy centers on the property. Each party claims title or interest therein, each adverse to the other. Every issue presented by the pleadings relates to the property. It is the thing about which the controversy arises, just as the contract is the thing about which the controversy arises under subdivision 3. But, were this otherwise, we could concede that a phrase used in chancery proceedings, in actions relating exclusively to specific property, and seeking specific relief, must be given the same meaning when used in law actions, based on contract, and seeking a money judgment only. Again, it is urged that, if the term "subject of the action" means the controversy involved, then the term had no place in the statute, because it was also necessary to state that the action arose on contract, and, as courts of general jurisdiction had jurisdiction of all actions on contract, it was entirely unnecessary after stating that the action arose on contract, to also state that the court had jurisdiction of the controversy. Granting this to be so, equally unnecessary expressions are frequently found in the statutes. But we think the premise unsound. Without having examined in detail as to the constitution of the courts in New York when the statute was adopted, there were at least the Supreme Court, the superior court of the City of New York, and the court of common pleas for the City and County of New York, all of which had jurisdiction in all or some cases arising on contracts, but their jurisdiction was not entirely concurrent. And in Minnesota, when the statute was adopted, the District Courts were without jurisdiction in certain cases

arising on contracts, the jurisdiction of Justice Courts being exclusive where the amount in controversy did not exceed $100. See *Castner* v, *Chandler*, 2 Minn. 86, (Gil. 68.) The same is true now. See § 5, Art. 6, Const. Minn. These facts render the provision strictly necessary.

The case of *Pennoyer* v. *Neff*, 95 U. S. 714, furnishes the groundwork for much of the respondents' contention in this case. But no point was decided in that case that can aid respondents. The facts were that the state court of Oregon had rendered a personal judgment against a nonresident nonappearing defendant, served by publication only. A general execution was issued upon the judgment, and certain lands of the execution defendant were sold, and the purchaser put in possession. Subsequently an action was brought in the Federal Court by the execution defendant against the purchaser to regain possession. The case turned upon the validity of the judgment in the Oregon state court. In the Federal Supreme Court the case received exhaustive consideration, and it was authoritatively announced that no state court had the power to enter a personal judgment against a nonappearing nonresident defendant, served by publication only. These principles, there announced, and which are now universally accepted as sound, rest upon the broad grounds that every sovereign state possesses exclusive jurisdiction over persons and property within its territory, and may properly determine for itself the status and capacity of its inhabitants, and may prescribe all rules for the acquirement and transfer of property, and for the execution and enforcement of contracts, within such territory; but that the writs and processes of a state court can have no extraterrorial force or binding effect. They cannot reach beyond the territorial lines of the state where issued, and directly affect persons or property in another state. It being certain, then, that no valid judgment in *personam* could be rendered in the case, it followed that no valid judgment whatever could be rendered, unless it was in the nature of a judgment *in rem*. But, to authorize a judgment *in rem*, some process of the court must have

been served upon the *res*, and it must have been brought within the direct control of the court, so that the judgment could direct its final disposition. The court declares that a judgment cannot occupy the uncertain position of being valid in case property of the defendant is subsequently seized in the state, or, failing in that, forever remain invalid, and that a judgment, if void when rendered, will forever remain void. This unanswerable argument leads inevitably to the conclusion that, in all actions against non-resident nonappearing defendants, served by publication only, property of the defendant must be seized before any valid judgment can be rendered. As said by the court in that case, the jurisdiction to investigate the controversy depends upon jurisdiction over property. There is no jurisdiction *in personam*, and, unless there is jurisdiction *in rem*, the action must go down. The learned counsel admit that it is only by inference that *Pennoyer* v. *Neff*, can assist respondents in this case. But it is argued that, by the commencement of an action against an avowed non-resident, no personal judgment is expected, and that, while the action is begun in *personam*, it is necessary for the plaintiff to at once proceed as in an action *in rem*; and admiralty works are cited to show that, in actions strictly *in rem*, the first step is to seize the property to be affected. But this was not an action *in rem*. It was begun as an action in *personam*, and no one could say that it would be anything but an action in *personam* until there had been completed service, and the time for answering had expired. The law could not compel defendant to come in and defend, but it had extended to him every opportunity to do so that it could, and no one was warranted in saying that he would not do so until, by his failure, he so declared. As said in *Cooper* v. *Reynolds*, 10 Wall. 308, and quoted with approval in *Pennoyer* v. *Neff*: "But if there is no appearance of defendant, and no service of process upon him, the case becomes, in its essential nature, a proceeding *in rem*." But what obligation rested upon plaintiff to invoke the jurisdiction *in rem* until it was

certain that jurisdiction in *personam* would not be acquired? True, when that time arrives, he must invoke the jurisdiction *in rem*, or suffer his action to fail. But we perceive no reason why he should sooner do so.

But, lastly, upon this point, it is urged—and there is reasoning *arguendo* in *Pennoyer* v. *Neff*, that suggests this line of argument —that the law assumes that property is in the possession of the owner, either in *personam* or by agent, and that, hence, he will have actual notice of its seizure, and can rush to its defense; but that a statute that requires only that property should be seized before judgment would be satisfied with a seizure one hour before judgment, and thus property would be taken without giving the owner any opportunity to be heard, or, in other words, "without due process of law." We think this reasoning places undue stress upon the fact of seizure, and loses sight of the effect of substituted service. Such service the law authorizes and recognizes. It will sustain no personal judgment,—can serve as the basis of no personal liability; but for all other purposes it is effective. The law is careful to conserve the rights of nonresident defendants. It provides that notice shall be published for a specified time, usually six weeks, and in the newspaper in the proper jurisdiction most likely to give defendant notice. It requires a copy of the summons and complaint to be sent to him when his address is known. All this is not mere idle form. It serves a substantial purpose. It is the theory of the law that notice of the pendency of the action is thus brought to the defendant, and only by the grace of permissive statutes is he permitted to deny it. And, when notice is thus received, he may be justified in disregarding it, so far as incurring any personal liability is concerned; but he is not justified in treating it as an entirely unwarranted assumption of power by a foreign court. He is bound to know the law, and he is bound to know that, if he have property in the jurisdiction, it can and will be seized in the action, unless he appears and incurs the liability of a personal judgment. It is, in effect, a modified form of the

old writ of *distringas.* A nonresident defendant, so served, is not compelled to appear; but he refuses at the risk of having his property seized and appropriated, not for the benefit of the state, as in the old writ, but for the benefit of the plaintiff. The writ of attachment, when used against a nonresident, is not necessarily or ordinarily used for the same purpose that it serves in case of a resident defendant personally served. There its object is to secure an insecure or jeopardized claim. But it may be that a personal judgment against the nonresident would be perfectly good, and all that plaintiff could desire. He uses the attachment to force the nonresident defendant either to submit to the chances of a personal judgment or suffer his property to be appropriated. It is the substituted service that gives notice of the pendency of the action, and that notice is a direct challenge to the defendant to appear and protect his property, if any he have in the jurisdiction. He has ample time. There is no legal harship. The New York rule of court did not require any specified time before judgment at which property should be seized. Neither does *Pennoyer* v. *Neff,* nor any other adjudicated case. *McKinney* v. *Collins,* 88 N. Y. 216, is also relied upon by respondents. There is language in that case which, standing alone, and disconnected with the facts, would strongly support respondents' contention. The case, in all its essential features, was a duplicate of *Pennoyer* v. *Neff.* The court followed that case, and went no further; but, in the opinion, the statutes of New York relating to publication of summons and the jurisdiction acquired thereby were discussed at length, and reasoning used which would seem to indicate that the attached property was the subject of the action. But the question was not in the case, and we do not think it was in the mind of the able jurist who wrote the opinion, because, after discussing the statutes and the New York decisions, none of which fairly met the point, he says: "I think, however, that the understanding of the courts having jurisdiction over such questions must be deemed to be expressed in the rule adopted by the judges, in 1858, when —making provision for carrying the statutes above referred to

into effect, and not enacting any new law, for this was beyond their power—they provided by rule 25 that," etc.; quoting the rule already set out in this opinion. It seems clear that the writer did not intend to give the statute any construction that would violate that rule. Thus viewed, the opinion is in entire harmony with what we have said. That such was the view of the decision taken by the court itself, see dissenting opinion of Earl, J., in *Bryan* v. *Publishing Co.*, (N. Y. App.) 19 N. E. Rep. 827. The only case we find, since *Pennoyer* v. *Neff*, where the points here raised were squarely decided, is *Bank* v. *Jacobson*, (S. D.) 66 N. W. Rep. 453; and that case is directly against respondents, and in full accord with what we have said. The statute in question has been in force for nearly 50 years. It has been in practically universal operation in the United States for more than a quarter of a century, yet no court of last resort has even given it the construction contended for by respondents, so far as our investigation can discover. The general, and, we believe, almost uniform, practice has been the other way. Property rights had been everywhere founded upon this practice. However desirable the practice contended for by respondents might be, it must come, if it come at all, from the legislature. Courts cannot, at this late day, torture it out of the existing statute. ·

One more point is presented in the brief. It is this: Granting the sufficiency of the affidavit for publication, it is contended that the record offered in evidence shows that no property of the defendant was in fact seized before the entry of judgment. The basis of the claim is the fact that the attachment was by garnishment, the garnishee summons being served upon a bank. The disclosure of the garnishee, made before judgment, showed that it held a large amount of notes belonging to the defendant, and which had been transferred to it by the defendant as collateral to his indebtedness to the bank, which at that time amounted to about one-third of the face value of the collateral notes. Section 5312 of the Minnesota statute reads: "No person or corporation

shall be adjudged a garnishee in either of the following cases, viz: First. By reason of any money or any other thing due to the defendant, unless, at the time of the service of the summons, the same is due absolutely, and without depending upon any contingency." It may be conceded that, under this provision, no judgment could at that time have been entered against the garnishee, requiring it to deliver the notes or any part thereof. But that was not the question. Was there any property of the defendant within the jurisdiction of the court? In other words, had the court jurisdiction *in rem?* If so, it had jurisdiction to render a judgment, to the satisfaction of which the property then before the court might ultimately be applied. We think this is reasonably clear. The defendant owed the notes subject to the lien of the garnishee. Or, to put it more favorably for respondents, the defendant's interest in the notes was an equity of redemption. But, under § 6842, Gen. St. Minn., an equity of redemption is clearly property, and, being property, is subject to levy. Whatever steps it may be necessary to take in order to realize upon the property cannot affect the validity of the levy. The court has the power to make all necessary orders to that end, as was in fact done in this case. We think the court had full jurisdiction to render a valid judgment *in rem.*

It follows that the record of the judgment of the District Court of Hennepin County, Minn., when offered in evidence, was not vulnerable to the objections urged. Its rejection was error, which necessitates a new trial in the case, and it is so ordered.

Reversed.

WALLIN, C. J., concurs.

CORLISS, J. I am compelled to dissent from the opinion of this court in this case. The contest before us relates to plaintiff's title to the note sued on. It was executed by defendant Vigen to defendant Rustad, and plaintiff claims the ownership of it under certain judicial proceedings, had in the District Court of the State of Minnesota against the

defendant Rustad, which, it is insisted, operated to transfer to plaintiff Rustad's title to the note. Those proceedings were instituted by a creditor of Rustad. Rustad was never served with process in that state, nor did he appear in the action. He was a nonresident, and the only service upon him was by publication. The note in question was in the hands of the Washington Bank of Minneapolis, Minn., as pledgee, Rustad having assigned it to the bank as collateral to his indebtedness to such bank. In the action against Rustad, garnishment proceedings were instituted against the bank with the view to the garnishment of this and other notes of Rustad held by the bank. In the view I take of the case, it is unnecessary for me to determine any question save that of jurisdiction. Defendant Rustad, the original owner of the note, and defendant Vigen, the maker thereof, unite in the contention that the Minnesota District Court never acquired jurisdiction over the property in question, and, therefore, that no title to such note passed to plaintiff, who purchased it under execution issued in the case, but that the title thereto is still in defendant Rustad. The attack upon the validity of the proceedings in Minnesota, which appears to me to be unanswerable, is based upon the claim that the affidavit for publication of the summons was fatally defective. If the affidavit was silent as to a jurisdictional fact, the service by publication founded upon it is a nullity; and, unless there was legal service of the summons, the judgment is void, notwithstanding the seizure of the *res* by the garnishment proceedings. That the affidavit was defective in the particular mentioned, I think, is capable of complete demonstration. It stated, not that the court "had jurisdiction of the subject of the action," but merely that it had "jurisdiction of the action." By stipulation in this case we are permitted to examine the Minnesota statutes and dicisions with the same effect as though they had been formally received in evidence as facts in the case. The statute relating to service by publication declares that: "When the defendant cannot be found within the state, of which the return of the sheriff of the county in which the action

is brought, that the defendant cannot be found in the county, is *prima facie* evidence, and upon the filing of an affidavit of the plaintiff, his agent or attorney, with the clerk of the court, stating that he believes that the defendant is not a resident of the state, or cannot be found therein, and that he has deposited a copy of the summons in the post-office, directed to the defendant at his place of residence, unless it is stated in the affidavit that such residence is not known to the affiant, and stating the existence of one of the cases herein specified, the service may be made by publication of the summons by the plaintiff or his attorney in either of the following cases." Section 5204, Gen. St. Minn. 1894. Then follows the enumeration of five distinct classes of cases in which the service by publication may be made. Only two of these need be here referred to. They are found in subdivisions 3 and 5 of the section. They read as follows: "Third. When the defendant is not a resident of the state, but has property therein, and the court has jurisdiction of the subject of the action. * * * Fifth. When the subject of the action is real or personal property in this state, and the defendant has or claims a lien or interest, actual or contingent, therein, or the relief demanded consists wholly or partly in excluding the defendant from any interest or lien therein." The proceeding, the validity of which is in question in this cause, falls within subdivision 3. It was therefore, necessary for the plaintiff therein to state in his affidavit for publication the facts set forth in that subdivision. A failure to do so would render the publication a nullity. *Cousins* v. *Alworth,* 44 Minn. 505, 47 N. W. Rep. 169; *Barber* v. *Morris,* 37 Minn. 194, 33 N. W. Rep. 559; *Corson* v. *Shoemaker,* (Minn.) 57 N. W. Rep. 134. In my opinion, the words "subject of the action" relate to property brought within the control of the court, and not to the claim on which the action is based. These words cannot be said to have received, at the time they first appeared in a similar statute, or, indeed, at the time they were incorporated in the Minnesota statute we are construing, so definite and fixed a meaning that no room for any other construction is left except

the one that limits their meaning to the claim sued upon. See Bliss, Code Pl. §§ 126, 373, 375; Pom. Rem. & Rem. Rights, §§ 475, 487-490, 775, 776, 794. On the contrary, at the time they were first inserted in the New York statute, afterwards borrowed by Minnesota from that state, they had been employed by the English court of chancery as referring to the property around which the controversy revolved. See opinion of Lord Westbury in *Cookney* v. *Anderson*, 1 De Gex, J. & S. 365. It is true that, when an attachment is issued in cases in which, by reason of the service of process within the jurisdiction, or the appearance of the defendant, the court has power to render a personal judgment, it cannot be said that the property seized constitutes the matter which the court is acting upon in that particular case. In such a case the attachment is a mere adjunct to the main proceeding, an incident to the leading purpose of the plaintiff, which is to enforce the demand sued on, and secure a personal judgment thereon against the defendant. But, when the defendant is a nonresident, and is not served, with process within the jurisdiction, and does not appear in the action, all possibility of a personal judgment disappears from the case. It proceeds in all respects as a proceeding *in rem*, although, nominally, it is a proceeding in *personam*. The judgment is in form against a personal defendant, but it is in fact as stictly a judgment against the specific property seized as though such property had been seized as the offending thing, or as the *res* liable for the claim embraced in the action, independently of any personal liability of a personal defendant. True it is that there is a personal defendant named in the papers, and it is likewise true that the proceeding can affect only his interest in the property attached. But, with respect to his interest in the *res*, the proceeding, in its essential nature, is strictly a proceeding *in rem*, if jurisdiction over the personal defendant is not obtained. The case, in legal effect, goes on against the interest of the nominal personal defendant in the actual impersonal defendant, which, by the attachment, has, to the extent of such interest, become as much responsible for the demand sued

on as though it was the offending thing, or the *res*, liable for the claim under admiralty law, and was proceeded against as such without any personal defendant being named in the case at all.

This conclusion results inevitably from settled principles of private international law. The defendant, in the case supposed, cannot be personally subjected to the jurisdiction of the court, so as to be bound in any other jurisdiction by a personal judgment rendered in the action; and, since the decision of the Federal Supreme Court in *Pennoyer* v. *Neff*, 95 U. S. 714, he cannot in this country be so bound even in the very state in which the judgment was rendered. Before that decision was promulgated, the doctrine enunciated in that case was unquestionably the sound doctrine; but some courts, confounding the general jurisdiction of each sovereignty over all property within its borders with the jurisdiction of a particular court over specific property proceeded against, had frequently held before that decision that the property which was in fact within the state when the suit was commenced might be seized after judgment rendered upon service by publication. This position was not tenable on principle. A proceeding must be *in rem* or in *personam*. When personal service is not made, an action can be sustained only as an action *in rem*. It is only on the theory that such an action is *in rem* that the court has power to take a single step. Jurisdiction must attach at the inception of the case. There can be no action without jurisdiction. As it cannot, in the case supposed, ever extend to the person, it must be a jurisdiction over property, and this jurisdiction must be coeval with the action. But there cannot be jurisdiction *in rem*—jurisdiction over property—unless it is proceeded against; and, when the property is proceeded against on the theory that it has been brought within the control of the court by seizure, and not because the suit itself relates to it, or some interest in or lien upon it, the only way in which it can be brought within the jurisdiction of the court is by seizure thereof in some form. Such seizure is indispensable to jurisdiction. Until seizure has taken place, no jurisdiction whatever is vested

in the court, and the proceedings are so much idle parade of arrogated authority. As there is no personal jurisdiction in the case supposed, there can be no power in the court to go on with the cause until property within the state has in some form been proceeded against and brought within the jurisdiction of the court. An attachment or seizure is necessary to institute a proceeding *in rem*; and it is also necessary that such attachment or seizure should precede service of notice, unless the legislature has otherwise provided. Whether such a provision would be valid is not here involved. I incline to the view that the publication of notice might precede seizure provided the statute in terms required the seizure to take place such a reasonable time before the entry of judgment that the 'defendant would have reasonable notice that his property was being proceeded against, and an opportunity to defend. In such a case the publication of the notice might be regarded as a preliminary step leading up to the seizure. Certainly the defendant would, under such a law, receive timely notice that his property was being proceeded against. But we have no such statute before us for construction. It does not require that the seizure should take place a reasonable time before judgment, unless the requirement that it antedate the publication of the summons is found in the provisions of the statute that the affidavit for publication shall state that the court has jurisdiction of the subject of the action. If we do not adopt this interpretation, terms of the statute are satisfied if attachment precedes judgment only a single minute. Such a construction of the statute is unreasonable, harsh, repugnant to sound principle and to natural justice, conflicts with the settled usages of courts in analogous cases, and it would, in my judgment, render the act void, as authorizing the taking of the property of the citizen without due process of law. We are, therefore, it seems to me, driven back upon the only other possible construction, *i. e.* that the attachment must, under the statute in question, precede the publication of summons, and must exist at the time the affidavit for such publication is made. The plaintiff is required to present

an affidavit showing that an attachment has been made, to the end that the court may see that it has jurisdiction over the *res* before proceeding further with the case; the statute contemplating that no other jurisdiction will be obtained in the case. ·

In construing the act in question, we find ourselves necessarily dealing with general principles of private international law, and not with the extent of the power of the states to modify such principles by legislation. It is obvious that, if that feature of the proceeding which alone gives it vitality—the seizure of property —may lawfully be absent from it at the time of the service of process, it may likewise be absent until the moment before the entry of judgment, and thus the defendant receive no notice whatever that the court is assuming to exercise jurisdiction over his property until it is too late for him to protect his interest in it. Up to the moment of the seizure, which may be immediately before judgment, the defendant, if he happens to know of the action at all, knows of it only as an unwarranted attempt to to exercise jurisdiction over his person. When the suit relates to to specific property (as in actions to foreclose liens on property, or to partition the same, or to remove a cloud from the title to real property, or to reform an instrument relating to the title,) the defendant, from the very first step in the case, has notice,— what the law regards as notice, and, usually, it is sufficient to apprise him of the action,—has notice that his property is being proceeded against. But, when the action is to recover money, and property is affected only as it is attached in the case, it is not until an actual seizure that the defendant can receive any information that such property forms the real subject of the action. Prior to that time, the suit has the appearance of an unjustifiable proceeding in *personam.* As in actions relating directly to property the defendant is from the beginning informed that property forms the subject of the action, so, where it is made the real subject of the action by seizure for a claim, he must likewise be given this notice from the inception of the case, or, at least, a reasonable time before the entry of judgment. The only

way of giving him such notice, where the demand itself does not relate to property, is by the attachment, of property in some form. In admiralty actions, the seizure always precedes the giving of notice by publication; and, when common law courts proceed on the same principle,—*i. e. in rem*,—the same procedure should be followed, in the absence of clear statutory provisions to the contrary; and, as we said before, if the attachment is to follow the giving of notice, it must at least precede the final judgment such a reasonable length of time as to afford the defendant an opportunity to learn of the attachment, and defend. The seizure is the notice that property is being proceeded against, whether the case is in a court of admiralty or a court of law. The published notice apprises the owner of the property in what court the suit is pending, and when and where he must appear to defend his rights. It is the seizure, therefore, which makes the proceeding one *in rem*; and for this reason the seizure must be the initial step in the case, or must, at least, precede judgment a reasonable time. An action which, because it has proceeded in *personam* against a nonresident not personally served, is without effect down to the time just preceding the entry of judgment, cannot, in a moment, be transmuted into an action *in rem* by seizure of property, and then, without opportunity for the defendant to learn that his property is proceeded against, ripen into a judgment *in rem*, as though the action had been an action *in rem* from the beginning. The Rubicon is crossed when we once reach the conclusion that a suit against a nonresident, based only on seizure of his property to satisfy the plaintiff's claim, is in its essence a proceeding *in rem*. Everything follows from this proposition. The principles which govern courts in proceedings *in rem* against property within their jurisdiction apply, and must be recognized. They are controlling. These principles require that, when the suit does not relate to property directly, but it is sought to be subjected to plaintiff's claim, it shall be seized as the basis of jurisdiction over the *res*,—the only jurisdiction the court can obtain.

That the proceeding by attachment against a nonresident defendant is one essentially *in rem* stands not alone upon principle. The Federal Supreme Court has repeatedly held this to be its real nature. In *Cooper* v. *Reynolds*, 10 Wall. 308, Mr. Justice Miller, speaking for the court, with respect to the character of such a proceeding, says: "But the plaintiff is met, at the commencement of his proceedings, by the fact that the defendant, is not within the territorial jurisdiction, and cannot be served with any process by which he can be brought personally within the power of the court. For this difficulty the statute has provided a remedy. It says that, upon affidavit being made of the fact, a writ of attachment may be issued and levied upon any of the defendant's property, and a publication may be made warning him to appear, and that thereafter the court may proceed in the case, whether he appears or not. If the defendant appears, the cause becomes mainly a suit in *personam*, with the added incident that the property attached remains liable, under the control of the court, to answer to any demand which may be established against the defendant by the final judgment of the court. But, if there is no appearance of the defendant, and no service of process on him, the case becomes in its essential nature a proceeding *in rem*, the only effect of which is to subject the property attached to the payment of the demand which the court may find to be due to the plaintiff. That such is the nature of this proceeding in this latter class of cases is clearly evinced by two well-established propositions: First. The judgment of the court, though in form a personal judgment against the defendant, has no effect beyond the property attached in that suit. No general execution can be issued for any balance unpaid after the attached property is exhausted. No suit can be maintained on such a judgment in the same court, or in any other; nor can it be used as evidence in any other proceeding not affecting the attached property; nor could the costs in that proceeding be collected of defendants out of any other property than that attached in the suit. Second. The court, in such a suit, cannot proceed unless

the officer finds some property of defendant on which to levy the writ of attachment. A return that none can be found is the end of the case, and deprives the court of further jurisdiction, though the publication may have been duly made and proven in court. Now, in this class of cases, on what does the jurisdiction of the court depend? It seems to us that the seizure of the property, or that, which, in this case, is the same in effect, levy of the writ of attachment on it, is the one essential requisite to jurisdiction, as it unquestionably is in proceedings purely *in rem*. Without this, the court can proceed no further. With it, the court can proceed to subject that property to the demand of plaintiff." And in *Pennoyer* v. *Neff*, 95 U. S. 714, the court said: "It is true that, in a strict sense, a proceeding *in rem* is one taken directly against property, and has for its object the disposition of the property, without reference to the title of individual claimants; but, in a larger and more general sense, the terms are applied to actions between parties where the direct object is to reach and dispose of property owned by them, or of some interest therein. Such are cases commenced by attachment against the property of debtors; or instituted to partition real estate, foreclose a mortgage, or enforce a lien. So far as they affect property in the state, they are substantially proceedings *in rem*, in the broader sense which we have mentioned."

The reasoning of the Federal Supreme Court in *Pennoyer* v. *Neff*, 95 U. S. 714, seems to lead inevitably to the view that, in cases where property is proceeded against merely by attachment, the seizure must be made at the commencement of the suit, or a reasonable time before judgment. It is, at least, certain that such was and is the practice in analogous cases in admiralty, and it is also true that, to require seizure to precede service by publication, or, at least, to be made a reasonable time before judgment, is in the interests of justice to the owner of the property and of orderly practice. Moreover, it is more rational to provide for seizure in advance, for, until seizure, the question of ultimate jurisdiction is unsettled. Jurisdiction may never attach. It is in

the light of these considerations that we must construe the words "subject of the action," as used in the Minnesota statute in question. They impel us to the belief that these words were employed to indicate the seizure of property in the case. It constitutes the subject of the action in such cases, as much as it does when the action is to foreclose a lien upon it. In reality, all the action becomes, after seizure, is an action to enforce the lien against the property seized, created by the attachment. The inquiry whether there is a valid claim is only incidental to the main question whether there is a lien on the property attached for which it should be sold, for without such lien there is no power to proceed. The court has no power to inquire into the merits of the claim for any other purpose than that of establishing such a lien on the property as will warrant its sale to satisfy such lien. Beyond this it cannot go. The question of the defendant's personal liability is not before it. Said the court in *Pennoyer* v. *Neff,* 95 U. S. 714: "The jurisdiction of the court to inquire into and determine his obligation at all is only incidental to its jurisdiction over the property." When there is an attachment against a nonresident, the attached property is, as we before said, as much the subject of the action as is property the subject of an action when it is brought to foreclose a lien. Courts of equity have often referred to the property, in foreclosure and similar cases, as constituting the subject of the action; and subdivision 5 of the section in question (§ 5204) recognizes this use of the phrase: "When the subject of the action is real or personal property in this state, and the defendant has or claims a lien or interest, actual or contingent, therein, or the relief demanded consists wholly or partly in excluding the defendant from any interest or lien therein." Gen. St. Minn. 1894, § 5204. It is therefore, apparent that, when the phrase is used in subdivision 3, it refers to the property seized, for, after seizure, it occupies the same relation to the proceeding *in rem* that property on which it is sought to foreclose a mortgage occupies with relation to a foreclosure suit. It is somewhat significant that the Minnesota

statute in terms permits the issue and levy of an attachment at any time after issue of the summons and before the service thereof. Section 5287. It is, therefore, always in the power of the plaintiff to attach before serving the summons by publication. In our view, when he cannot secure jurisdiction over the person, he must, under the Minnesota statute, always attach first. The construction we place on the words "subject of the action" saves our reaching the conclusion that, as originally inserted in the New York statute, they were meaningless. They unquestionably relate to an extrinsic fact, and, if that fact is merely the jurisdiction over the claim in controversy, they had no significance in the New York statute as originally framed, for, on showing, as the New York statute required, that the action was on contract, the jurisdiction of the court of original jurisdiction over the claim in dispute would have been fully established in New York, there being no limitation on the original jurisdiction of the Supreme Court in that state in contract cases. To say that these words relate to the claim sued on is to assert that the legislature in New York required the plaintiff, in an action in the Supreme Court in that state, to state twice in his affidavit that the court had jurisdiction over such claim.

There are, doubtless, decisions which appear to militate against our view, but they were rendered before the mists had lifted from this department of jurisprudence. They ignore, or at least attach but little importance to, the peculiar functions of an attachment in actions against nonresidents. In actions in which a personal judgment can be rendered, an attachment has for its sole object the creating of a lien on property as security for the claim sued on. But where a personal judgment cannot be rendered in an action for money, the attachment of property is an indispensable jurisdictional step. By it, and by it alone, jurisdiction over the *res* is obtained. The question is no longer merely one of lien, but of jurisdiction. Where the plaintiff has obtained jurisdiction over the person, he may postpone the seizure till just before the entry of judgment, for all he is after is

a lien. But where jurisdiction over the person is not secured, he needs more than a lien on property,—must have it. He must obtain jurisdiction over the property itself, or his whole proceeding is abortive; and this jurisdiction like any other jurisdiction, must precede the judgment at least such a reasonable time as will afford the defendant an opportunity to defend. The later utterances of the New York court of appeals on the subject seem to accord with our decision. In *McKinney* v. *Collins*, 88 N. Y. 216, the court said: "By the code of 1849, (Laws 1849, Ch. 438,) to entitle the plaintiff to proceed by publication, it must appear, not only that the person to be served cannot be found within the state, and that a cause of action exists against him, but the case itself must be one of several classes there indicated. Section 135. It is no longer enough that the supposed absent defendant has property in the state, but, if he is a nonresident, it must also appear that the action is on contract [this limitation has abrogated,] and that 'the court has jurisdiction of the subject of the action.' Section 135, Subd. 3. These words seem to me to introduce an important qualification to the general language of the section already referred to. As found in the code of 1849, not only must a cause of action exist against a nonresident defendant, but the court must have jurisdiction 'of the subject of the action.' These three things must be established before a judge has jurisdiction to make an order for service by publication. In Subd. 4, § 135, we find another case stated in which an order for publication may be had, described in these words: 'Where the subject of the action is real or personal property in this state, and the defendant has or claims a lien or interest, actual or contingent, therein, or the relief demanded consists fully or partly in excluding the defendant from any interest therein.' What do the words 'subject of the action' mean? That they are words of limitation and qualification is plain from the language of both subdivisions 3 and 4. Evidently they are not identical with the words 'cause of action,' and are not satisfied when the court

N. D. R.—10

has before it merely the obligation of a contract. They seem to have relation to some property or thing, concerning which the proceeding is instituted and carried on, and the changes to be effected by it. Similar words are found in § 167, (formerly § 143,) as amended in Laws 1852, Ch. 392, providing that the plaintiff may unite in the same complaint several causes of action, whether they be such as have been heretofore denominated 'legal' or 'equitable,' or both, where they all arise out of the same transaction, or transactions connected with the same 'subject matter.' And by § 144 it is cause for demurrer that the court has 'no jurisdiction of the person of the defendant, or the subject of the action;' and these words may also be construed with those of subdivision 6, which declares, as cause for demurrer, that the complaint does not state facts sufficient to constitute 'a cause of action.' It is therefore apparent that the phrases 'cause of action' and 'subject of action' are not used interchangeably, or as synonyms. It is not easy to define their precise meaning, but it seems apparent that they relate, not to an action at law, though to one which formerly would have proceeded in equity; the object being to give some specific relief rather than a simple judgment against a person, as in an action to cancel a mortgage upon the ground of usury, or to enforce specific performance, or to attain such relief as by the rules of the common law was denied to the suitor in its forum,—certainly not an action where the only relief sought was a judgment upon contract for the payment of money. There might be jurisdiction of the cause of action. There certainly would be in the case supposed. But there must also be jurisdiction over the 'subject of the action,' and, until the property or thing to be affected by it has been seized or taken by legal process, it is difficult to see how a court can be said to have jurisdiction over it." While entertaining great respect for the decisions of the Supreme Court of South Dakota, I am unable to agree with its ruling in the case of *Bank* v. *Jacobson*, 66 N. W. Rep. 453.

When the words "subject of the action" are found in statutes

relating to the joinder of causes of action and the right to interpose counterclaims, the very nature of the subject makes it obvious that such words could have no reference to property attached. But these words have no such rigid significance that their meaning may not be radically different when they are used in a statute which contemplates that property, and property alone is to become the real subject of the controversy, because of the fact that the statute proceeds on the theory that no personal judgment, enforceable as such, can be rendered in the case. The Minnesota statute authorizing service by publication is, as all such statutes are, based upon the fundamental idea that the proceeding in which such service is to be made will be exclusively a proceeding *in rem,*—a proceeding against specific property; that such property will form the real subject of the litigation. When, in such a statute, the words "subject of the action" are found, in a provision requiring the affidavit, which must precede service by publication, to state that the court has jurisdiction of the subject of the action, it is to my mind a natural inference that these words refer to property which, by being seized in such a proceeding, wherein a personal judgment cannot be rendered, becomes the only substantial subject of the action,—the only matter on which the court can act with any legal effect. The court cannot take jurisdiction of the cause of action, except as incidental to its jurisdiction over the real subject of the action, —the property seized. It cannot render a personal judgment on such a cause of action which will be of any legal effect as a judgment enforceable generally against the property of the defendant. Such a personal judgment would be void. We can see no reason why the plaintiff should be required to state in his affidavit, on which he must base his service of the summons of publication, that the court has jurisdiction of the subject of the action, if these words mean only the claim he is seeking to enforce. The District Court of Minnesota is a court of general original jurisdiction, and, as such, has original jurisdiction of all civil actions (*Agin* v. *Heyward*, 6 Minn. 110 [Gil. 53;]) and it is only in civil

actions that service by publication is provided for. Therefore, whenever a civil action is commenced, whatever be its nature, the District Court of that state does, as a matter of fact, have jurisdiction of the subject-matter. Why should the plaintiff be required to state this conclusion in his affidavit when such conclusion is apparent from the mere fact that he has instituted a civil action? It is impossible to serve a summons by publication in a civil action without the court having jurisdiction of the subject matter of the action, for it has jurisdiction of the subject matter of all civil actions. If, therefore, these words mean only the claim sued upon, the statute requires the plaintiff to swear to an idle thing,—a mere proposition of law, and not a fact. When the plaintiff is required, in proceedings essentially *in rem*, to swear to the fact that the court has jurisdiction of, not "the cause of action," or of the "subject matter," but of the "subject of the action," it is to compel him to bring upon the record of the case an extrinsic fact, on which the power of the court to proceed in the action with legal effect depends, and not to force him to bring upon the record a declaration of a mere legal proposition, of which the District Court would necessarily be informed, from the simple fact that a civil action was being instituted in that court. It is urged that, if the purpose had been to require seizure of property before publication of the summons, the language of the statute would have been, "when the defendant has property within the state which has been attached," or that equally explicit language would have been used. But it is notorious that the most accurate mode of expression is not necessarily or even generally adopted in the drafting of statutes. Felicity of diction in the framing of laws is seldom attained. Had the art of formulating statutory provisions reached anything like perfection, the courts would not be constantly besieged by litigants seeking to have the doubtful meaning of legislative enactments set at rest. It has been the experience of all judicial tribunals that the interpretation of statutes is involved in a large percentage of cases, that no more difficult duty devolves upon them than that of constru-

ing acts of the legislature, and that often the conclusion reached is, because of the hopeless ambiguity of the law, a conclusion with which the court is not altogether satisfied.

The argument advanced by counsel for plaintiff has a double edge. If the object was to provide that the plaintiff was to state in his affidavit that the court had jurisdiction of the claim sued upon, why was not the phrase "subject matter" employed? Then no uncertainty could have existed. This phrase was not employed; but, on the contrary, another phrase was used, which, in courts of equity, had been long understood to refer to the property which formed the real subject of the controversy. In a proceeding *in rem* to foreclose a mortgage the foreclosure in one sense constitutes the subject of the action. But courts of equity had come to speak of the property itself as the real subject of the action. And so, when the legislature, under our blended systems of procedure, embracing both legal and equitable actions, assimilated the procedure in legal and equitable actions, in the matter of reaching the property of nonresidents as well as with regards to other matters, it naturally used the words "subject of the action" to express, with respect to legal actions, the same meaning which it had in equitable causes. In both classes of cases, the statute, contemplating that there can be no personal judgment, refers by the use of the words "subject of the action" to the only thing which constitutes the real subject of the action, *i. e.* the property proceeded against. In an action to foreclose a mortgage against a nonresident, the subject of the action might, as we before stated, be regarded, in one sense, as the foreclosure of the lien. So, in an action at law against a nonresident upon contract, the enforcement of the contract might in the same sense be considered the subject of the action. But courts of equity have long regarded the property in such a foreclosure action as constituting the real subject of the action, for it is all that can be reached in the proceeding. Why should not the same court, which administers equitable relief, regard, in a legal action of which it also has jurisdiction, the property attached as the

real subject of the action, in view of the fact that, just the same as in the foreclosure action referred to, the property is the thing against which the proceeding is leveled, and which, alone, can be affected by it?

It is said that, if these words, "subject of the action," mean seizure of property, why was the plaintiff required to state, also, that the defendant had property in the state? Proof that property had been seized in the state would be proof that the defendant had property therein. But there is no incongruity in the use of these two phrases. The provision, as we construe it, in effect reads as follows: "That the defendant has property within the state which has been attached." Certainly it would not be claimed that such a provision was open to serious criticism for redundancy, although it would be strictly true that the same idea might have been expressed by a declaration that the plaintiff should state, in his affidavit, that property of the defendant had been attached. Over against these arguments of counsel for plaintiff, which are by no means destitute of force, are set the following arguments, which in my judgment are controlling: First. On their view of the meaning of those words, such words require the plaintiff to state that which the court knows from the mere fact that it is in a civil action that the plaintiff desires to serve a summons by publication,—to state, not an extrinsic fact, or, indeed, a fact at all, but a mere proposition of law, which must invariably be true in all such cases. Second. Considering the essential nature of the proceedings, the anologies of the law, and the meaning given to these words by courts of equity, they are in this statute more susceptible of the construction we place upon them than the one for which plaintiff's counsel contends. Third. It is only through this interpretation of these words that any provision can be found in the statutes which makes it necessary for the plaintiff to attach a reasonable time before judgment, or at any time until the moment before judgment is entered; and to hold that the statutes authorize such a belated attachment, in a proceeding which can have no force

except as to property attached, is to conclude that such statutes authorize a proceeding repugnant to the state and the federal constitutions, and to that fundamental principle of natural justice, that a person, before being affected by the judgment of a court, shall have such a notice as calls upon him to defend in time to enable him to make his defense. Notice that a foreign court is seeking to obtain a personal judgment, without personal service of process in the foreign jurisdiction, is notice to which a defendant is under no legal obligation to respond. Notice, through attachment of his property, that the same court is assuming to exercise jurisdiction over such property, is not reasonable notice when it immediately precedes judgment. As the affidavit did not state that the court had jurisdiction of the subject of the action, and as no other language appears therein showing that property of the defendant had been seized, I am of opinion that the court was without jurisdiction, and that, therefore, its judgment, and the sale thereunder of the note sued upon in this action, were void. Hence, the plaintiff is in my opinion without title to this note.

I fully agree with my associates in the disposition of the other point in the case.